DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

### JUNE TERM, 1878.

---

DAVID S. BLACKMAN ET AL., PLAINTIFFS IN ERROR, v. ABSALOM DOUGHTY ET AL., DEFENDANTS IN ERROR.

1. In the description of land in a conveyance, as between an ideal line and a fixed monument described as being therein, if it appears that the monument is in fact not in the line, the monument will govern.

2. Where, in an action of trespass, there were two surveys by the same grantors of different tracts of land—one, the earlier, bounding the land thereby conveyed, on the south, on a line called the Helby line; and the other bounding the land conveyed by it, on the north, by the same line ; and the former survey referred to a pine tree for a corner in that line—*held*, that it was lawful for those who claimed under the later survey to show, by evidence *dehors* the surveys, that the pine tree marked the boundary of the tract first surveyed, and, notwithstanding the statement in the survey of that tract, was not in fact in the line; *i. e.*, that the statement in the survey that it was in the line was a mistake, and therefore the monument (the pine tree) governing the line was not meant to be the boundary of the tract first surveyed.

---

In error to the Atlantic Circuit Court.

The action was in trespass, brought by the plaintiffs in

319

error to recover damages for timber cut by the defendants, on lands claimed by both parties. Under the instruction of the judge, that the defendants' title covered the land in dispute, and they had the right to cut the trees in question, the jury rendered a verdict for the defendants.

For the plaintiffs in error, *D. J. Pancoast.*

For the defendants in error, *P. L. Voorhees* and *A. Browning.*

The opinion of the court was delivered by

THE CHANCELLOR. The writ of error brings up for review a judgment of the Circuit Court of Atlantic county, in an action of trespass, between David S. Blackman and others, plaintiffs, and Absalom Doughty and Samuel Dixon, defendants. The suit was brought to recover damages for timber cut by the defendants from land of which the plaintiffs claim to be the owners, and which is also claimed by the defendant Doughty. He claims under a survey (called the Doughty survey) inspected and approved by the council of proprietors of West Jersey, on the 7th of May, 1761, by which they conveyed to Edward Doughty a tract of land in Galloway township, Gloucester county, by the following description: Beginning at a small pine tree marked four blazes and the letters E. D., standing on the southwest side of the Delaware road, near the foot of Joseph Adams' road; running thence, (1) north, forty five degrees east, six chains and twenty five links, to a pine tree marked for a corner; thence, (2) south, seventy seven degrees east, twenty five chains and a half, to a small pine tree marked for a corner; thence, (3) north, eighty five degrees east, eight chains, to a small white oak marked for a corner; thence, (4) south, eighty degrees east, twenty five chains, to a small scrub white oak marked for a corner, standing near where the neck road crosses Adams' road; thence, (5) south, ten chains and a half, to a small pine marked for a corner; thence, (6) south, fifteen

degrees west, twenty two chains, to a pine tree marked for a corner, standing in the line of a tract of land formerly sur-veyed to Sarah Helby; thence, in said line, (7) west, thirty two chains and eighty links, to a stake; thence, (8) north, thirty three degrees and forty three chains and seventy links, to the place of beginning : containing one hundred and sixty six acres and one rood, besides allowance for highways.

The plaintiffs claim under what is known as the Leeds survey, which was inspected and approved by the above mentioned council of proprietors, on the 5th of May, 1779, by which they conveyed to John Leeds, junior, a tract of land in the above mentioned township, bounded as follows, viz. : Beginning at a white oak marked four blazes and twelve notches, standing on the south side of the most southerly branch of Beaver run, and supposed to be about five chains above the going over of Adams' road; then extends, (1) west, forty six chains, crossing said branch to a white oak standing on the west side of the Neck road, in a line with Edward Doughty's one hundred and sixty six acres; then runs in the same, bounding thereon, (2) south, fifteen degrees west, twelve chains, to a large pine, being corner to said Doughty's land; then, by the same, bounding thereby, (3) west, thirty two chains; then, (4) north, thirty three degrees west, thirteen chains and fifty links to a pine; then, (5) west, forty chains, to a pine tree marked as before; then, (6) south, sixteen chains, to a large survey formerly made to Sarah Helby, now in the possession of Richard Price and John Little; then, bounding by the same, (7) east, one hundred and twenty eight chains, to a post in said line; then, (8) north, sixteen chains, to the white oak tree first named : containing one hundred and fifty seven acres, besides allowance for highways.

Doughty claims to be the owner of all the land conveyed by the survey above mentioned to his ancestor, Edward Doughty, and the plaintiffs claim all the land conveyed to John Leeds, junior, by the survey to him. It will be perceived that both surveys refer to the line of land previously

surveyed to Sarah Helby.   The sixth course of the Doughty survey is "south, fifteen degrees west, twenty two chains, to a pine tree marked for a corner, standing in the line of a tract of land formerly surveyed to Sarah Helby;" and the seventh runs in that line west, thirty two chains and eighty links, to a stake.   The fifth course of the Leeds survey runs forty chains, to a marked pine tree; the sixth, "south, sixteen chains, to a large survey formerly made to Sarah Helby;" and the seventh runs along the line of that survey, east, one hundred and twenty eight chains, to a post in that line.   The two tracts immediately adjoin each other.   The Helby line, though said to be the southerly line of the Doughty tract, is not one of the three northerly lines of the Leeds tract, but is the southerly boundary thereof.   The plaintiffs insist that the reference to the Helby line in the Doughty survey was the result of a mistake; that the pine tree, mentioned in the survey as standing in the Helby line, did not in fact stand in that line, but a very considerable distance from it; that the pine tree was recognized by the respective owners of the Doughty and Leeds tracts as marking a corner of the Doughty tract; and that the southerly line of the Doughty tract did not run in the Helby line, but north of it.   The location of the Helby line appears to have been in dispute nearly or quite as far back as fifty years ago, among some of those persons whose land was bounded upon it in their surveys or title deeds; and in 1831 they, under and in accordance with the provisions of the fourth section of the act of June 5th, 1787, "for the limitation of suits respecting titles to land," (*Rev.*, *p.* 598,) established that line as a boundary to their lands.   The line thus established by them has since that time been known as the "compromise Helby line."   The defendant Doughty claims down to that line as the southern boundary of the Doughty tract, while, on the other hand, the plaintiffs claim up to the before mentioned line north of it, which, as before stated, they insist is what was by mistake designated in the Doughty survey as the line of the land surveyed to Sarah Helby.

It will be seen that the controversy between the parties is as to the title to the land between the compromise Helby line and the line last mentioned. On that land the trees were, for the cutting of which this suit was brought. On the trial the judge charged the jury that it could make no difference where the true Helby line is, because the survey under which the plaintiffs claim, as well as that under which Doughty claims, runs to the Helby line; so that wherever that line may be, the plaintiffs would have no title to the premises on which the trees were cut; the Doughty survey being the older, and that the plaintiffs, on their own map, laid down the Helby line and claimed only to it as their boundary. He, therefore, charged the jury that Doughty had a better claim to the same line under the mere paper titles; and he further charged, as matter of law, that Doughty had lawful claim to boundary on the compromise Helby line, and therefore had title to the premises in dispute. To this part of the charge the plaintiffs excepted, and the question before us is, whether the court erred therein.

That the true location of the Helby line is not known, is clear from the evidence. It was in dispute when the agreement of land owners above mentioned was made. That it was not then found is evidenced by the fact that the line then established by that agreement is known and called the "compromise Helby line." Judge Clement, who has had much experience as surveyor and conveyancer of lands there, says, in his testimony, that the true location of the Helby line had been an open question for many years, and the object of the compromise was to settle its location; that, in his opinion, the true Helby line is twenty chains south of the compromise line; that he once ran a line for General Enoch Doughty within eighty links of the stump hole corner claimed by the plaintiffs; that he supposes that a half dozen lines have been run for the Helby line; that the woods are full of marks, and that the Helby line has always been a disputed line.

Neither the plaintiffs' nor the defendants' grantors were parties to the agreement by which the compromise line was

established, and it therefore is not binding on the parties to this suit. Though the surveys of both tracts speak of the Helby line, they do not, as before mentioned, treat it as a co-terminous boundary. That the southern boundary of the Doughty tract was believed by Absalom Doughty, senior, (father of the defendant, Doughty,) when he was the owner of that tract, to be where the plaintiffs now insist that it is, north of the Helby line, is shown by the testimony of William Johnson, an aged witness, who testifies that he worked for Doughty's father at his grist mill, and cut logs, frame stuff and fire wood for him; that he is familiar with the Doughty woodland, and has known it for between fifty and sixty years; that he knows the corner between the Doughty land and the land of the plaintiffs; that Doughty's father told him that that was his corner, and showed him the line, and told him when he cut fire wood or frame stuff not to cut over it; and that the corner was then a large pine stump; and he told the witness that he had cut down the tree for a mill-shaft, and that his father had scolded him for doing it. The witness lived near the Doughty land, and was employed by Doughty's father to watch it to prevent trespasses upon it, and to that end the latter showed him where the line was. It appears from the testimony of this witness that Doughty's father recognized the land lying south of the line, which the plaintiffs claim is the southern line of his land, as the land of the parties under whom the plaintiffs claim title. There is evidence that the stump referred to by this witness was recognized and claimed by Nehemiah Blackman, when he was the owner of the Leeds tract, as his corner. The line claimed by the plaintiffs, and said to have been recognized by Doughty's father, is marked by a row of trees, marked as for a boundary. Further, in 1837, Doughty caused a re-survey of the Doughty tract to be made, under the supplement passed November 28th, 1789, (*Rev.*, *p.* 599,) to the act before mentioned, and in that survey he recognizes a large pine tree as the seventh corner of the tract, and declares that it is proved to be the corner by the affirmation of David Johnson; and from thence

he runs south, eighty nine degrees and fifteen minutes west, thirty two chains and eighty links, by an old marked line for a corner. By the re-survey he claims that the tract contains one hundred and eighty eight acres and fifty seven hundredths of an acre, besides the usual allowance for highways. The contents of the tract, if the compromise Helby line be taken as the southerly line, would be two hundred and seventy three acres and sixty hundredths of an acre, besides the usual allowance for highways. In 1856 or 1857, Doughty and Jesse Adams bargained with Thomas C. Hamill for the purchase of a tract of ten acres, which was in 1857 conveyed by Hamill to the son of Adams accordingly. That tract, if the compromise Helby line is the southern boundary of the Doughty tract, would be included in the Doughty tract, but not if the southerly line is as claimed by the plaintiffs. There is other testimony on the subject of the recognition by the owners of the Doughty tract of the line as claimed by the plaintiffs. Judge Clement testifies that in his survey of the Doughty tract, he measured thirty five chains and fourteen links to get to the Helby line; that taking the distance of the line as given in the survey, it would stop at or near the large pine hole, and there was a line of marked trees running to that hole. He says that if there had been no call for the Helby line, he would have stopped there. He further says, as before stated, that he once ran a line for General Enoch Doughty within eighty links of the stump hole claimed by the plaintiffs.

There is evidence, as before stated, that Doughty's father recognized the stump hole in question as the corner, and recognized also the claim of those under whom the plaintiffs claim, to the land on the south of the line, which would be thereby established accordingly. If that stump hole was indeed the true corner, and the line which would be thereby established was the true line of the Doughty tract, then the stump was not in the Helby line, but was north of it, and the statement in the Doughty survey that the pine tree, of which it was the stump, was in the Helby line was a mistake.

That the proprietors intended to convey the Leeds land lying between the southerly line of the Doughty tract and the Helby line is manifest. The southerly line of the Leeds tract was declared, in the survey to Leeds, to be the Helby line, and the middle one of the northerly lines of that tract runs along the line of the Doughty tract.

The Leeds survey appears to have been carefully made so as not to include any part of the Doughty tract. There is evidence that the owners of the Doughty tract recognized the claim of the plaintiffs, or those under whom they claim, to the land on the south of that line, which is the land in dispute.

Whether the statement in the Doughty survey, that the pine tree at the termination of the sixth course of that survey was in the Helby line, was a mistake or not, was a question of fact, and it was a material question. In the description of land in a conveyance, as between an ideal line and a fixed monument, described as being therein, if it appear that the monument is, in fact, not in the line, the monument will govern. Says Judge Story, in *Cleveland* v. *Smith*, 2 *Story* 278, 288, " It is with a view to ascertain the intention of the parties to deeds and grants, that the courts of law, for the purpose of founding just presumptions of the intention, have adopted certain rules of interpretation, not as artificial rules, built upon mere theory, but as the true results of human experience. When, therefore, they have held it to be a general rule, in the interpretation of the descriptive words of deeds and grants, that courses, and distances, and admeasurements and ideal lines should yield to known and fixed monuments, natural or artificial, upon the ground itself, they have. but adopted the result of the common sense of mankind, because causes of mistake may more easily arise from the former than from the latter ; and it is more likely that men may commit an error in courses, or distances, or admeasurements, or in references to ideal lines, such as those of surveys, than in monuments, and fixed and stationary objects, visible on the very land ; and that in purchases and sales and bounties, the

latter, as the best ordinary means of information, as well as of exclusive possession, are uppermost in their minds, and regulate their acts and intentions. Hence, a known spring, referred to as the corner of a boundary line, has always been deemed a more certain reference, in the understanding of the parties, than the ideal line of a survey of the land of another person, supposed to terminate at the same place. If they differ in point of location, the uniform rule is, that the spring governs as to the corner boundary, and not the survey. For the like reason, the plan of a survey, if it does not coincide with the actual monuments on the land, yields to the latter in point of certainty and proof of intention.

"The same ground is equally true as to the courses and distances from monument to monument. If they differ, the monuments govern, and not the courses and distances; or, in other words, measurements yield to monuments, because they are more open to mistake, and less carefully observed or significantly marked." In that case, in a grant of land from the commonwealth of Massachusetts to the towns of Taunton and Raynham, the land was described as "beginning in the north line of the million acres, at a yellow birch tree, six miles east from the southeast corner," &c., (the birch tree being marked as a monument in the original survey of the land); whereas, the birch tree did not in fact stand upon the north line of the million acre tract as supposed, but was so situated that a gore of land was left between it and that north line. It was held that the birch tree, and not the north line, was to be taken as the boundary of the land granted.

In the case under consideration, if the plaintiffs could have shown, by evidence *dehors* the surveys, that the pine tree marked the boundary, it would have been lawful for them to do so, and it would have been lawful for them to show, if they could, that the pine tree, notwithstanding the statement in the Doughty survey to the contrary, was not in the Helby line. And it was a question of fact which should have been left to the jury, whether the pine tree was in fact in the place where now the stump hole is which is spoken of by the plain-

tiffs' witnesses.  And if the evidence established the fact that the line, contended for by the plaintiffs, running therefrom westerly was the southerly line of the Doughty tract, the plaintiffs were entitled to recover; for then their title to the premises in dispute would have been established.

I am of opinion, therefore, that the judgment below should be reversed.

*For affirmance*—THE CHIEF JUSTICE, DODD.    2.

*For reversal*—THE CHANCELLOR, DEPUE, DIXON, KNAPP, SCUDDER, LILLY, WALES.    7.